ZIMMERMAN and wife, Respondents, v. DORNBROOK, Appellant.

*February 5—March 3, 1959.*

For the appellant there were briefs by *Emery Paul* of Markesan, and *Lueck & Skupniewitz* of Beaver Dam, and oral argument by *A. W. Lueck.*

For the respondents there was a brief and oral argument by *Henry P. Hughes* of Oshkosh.

DIETERICH, J.   Pursuant to the terms of the contract the Zimmermans agreed to farm and cultivate the farm owned by A. H. Dornbrook for one year and, among other things, it was agreed that one half of the crops and increase in hogs and cattle should be delivered to the plaintiffs.

During the summer of 1957 the plaintiffs harvested the crops and stored approximately 70 tons of hay and 2,000 bushels, by measure, of oats, half of which belonged to the Zimmermans.   Dornbrook refused to permit them to withdraw their half and kept it locked in the barn.   The Zimmermans claim that before the corn was ready, and before they had an opportunity to fill the silos, the defendant employed a crew and brought them onto the farm and filled the silos for which Dornbrook now claims compensation.

At the expiration of the lease the Zimmermans attempted to remove their half of the cattle, hogs, and produce.   Dornbrook prevented them from doing this and called the sheriff. After some negotiations between the parties certain hogs were sold to Oscar Mayer & Company and the check for $1,846 made out by the purchaser, was made payable to Henry Hughes, the attorney for the plaintiffs, and Emery

Paul, one of the attorneys for the defendant. Later, at the suggestion of the court, the check was indorsed and cash procured and deposited with the clerk of circuit court. It is undisputed that half of this amount belongs to the Zimmermans and half to Dornbrook.

During the course of the trial a conference was held with the court in chambers and it was agreed between the parties that the hay and oats be equally divided between the parties and the court directed the sheriff of Green Lake county to be present at the time of the division. All of the issues presented and claimed by the Zimmermans in their complaint were settled. The only issues that remained were those alleged in the counterclaim, that:

". . . plaintiffs failed, refused, and neglected to work and operate said farm as required by the terms of said agreement, and, on the contrary, wilfully violated the same and the terms and conditions thereof, to the detriment and damage to defendant, and, with respect thereto, defendant alleges and details as follows:

"(a) Defendant was required by the DHIA to guarantee plaintiffs' one half of its testing fees in order to get the testing done, and this defendant did, to his damage $25.12, and plaintiffs have not paid same.

"(b) Plaintiffs refused to harvest and put the corn in the silo in proper season in the fall of 1957, and defendant was thereupon required to do so, and he did so as was his right under paragraph 20 of said agreement, to defendant's cost and damage $375.75.

"(c) Plaintiffs assert that three of the cows furnished by defendant died, and if they did, it was in each case due to the fact that plaintiffs neglected to properly care for them, as defendant is informed and believes, to defendant's damage $495.

"(d) The death of one heifer furnished by defendant was caused by plaintiffs' neglect and abuse of her, as defendant is informed and believes, to defendant's damage $115.

"(e) Defendant owned a tank automatic-shutoff valve of the value of $12, and plaintiffs either broke it, or appropriated it to their own use, or carelessly permitted it to be removed from the farm, as defendant is informed and believes —it was not there at the termination of said contract year, and it has not been returned to defendant, although requested by him—to defendant's damage $12.

"(f) Plaintiffs took from said farm at the close of the contract year a whey-tank valve owned by defendant, and, although requested, have not returned it, to defendant's damage $7.50.

"(g) Plaintiffs, by careless operation of some machinery, damaged the oats bin, to defendant's damage $16.

"(h) Plaintiffs removed horse stalls in the barn without defendant's consent, to defendant's damage $25.

"(i) Plaintiffs used for other than tractor purposes gasoline purchased by defendant under the second paragraph . . . to defendant's damage $300.

"(j) Plaintiffs, by careless operation of a tractor, damaged a lane fence, to defendant's damage $50.

"(k) By the terms of said agreement defendant is to divide all cattle. Defendant was ready and offered to proceed with such division at the end of the contract year, but plaintiffs unreasonably refused to co-operate and this resulted in unnecessary delay, and because thereof defendant incurred additional and unnecessary expense of $105, and defendant paid the same, of which one half is properly and justly chargeable against plaintiffs, to defendant's damage $52.50.

"(l) Of the sheep that were placed on the farm pursuant to said agreement, and their increase,

"(1) Thirty-one lambs died in the summer of 1957, due to the negligence of plaintiffs in not properly caring for them, to defendant's damage $232.50.

"(2) One old sheep and three lambs died during the contract year, due to the negligence of plaintiffs in not properly caring for her at lambing time, to defendant's damage $20.

"(3) Two more lambs died during the contract year at lambing time, due to the negligence of plaintiffs in not properly caring for them, to defendant's damage $5.

"(m) Plaintiffs negligently failed and neglected to properly care for and feed the swine during the contract year, and did not properly fit them for market, although there was plenty of feed for that purpose, and proper care and feeding would have produced much-better and more-valuable animals that were sold at market and would have produced much-better and more-valuable animals that were divided, to defendant's damage $205.

"(4) The total of defendant's damages as alleged and detailed in foregoing items (a) to (m), inclusive, is $1,936.37, and all of same is due from plaintiffs to defendant, and none of same has been paid."

The issues raised as a result of the counterclaim of the defendant were the only issues presented in a special verdict to the jury for determination, with the exception of the following items.

$25.12 due Wisner by the Zimmermans, that Dornbrook had verbally guaranteed, and also the undisputed items relating to cows and sows which were settled by stipulation. These matters were not submitted to the jury for determination as they were an admitted fact.

The jury returned the following special verdict:

"1. Was the defendant Dornbrook justified in hiring help and equipment and causing the silos to be filled?
"Answer: No.
"3. Is the defendant Dornbrook entitled to the automatic-shutoff valve?
"Answer: No.
"5. Did the plaintiffs Zimmerman, in a negligent manner, damage the oats bin?
"Answer: No.
"7. Did the plaintiffs Zimmerman remove horse stalls without the consent of the defendant Dornbrook?
"Answer: No.
"9. Did the plaintiffs Zimmerman use gasoline from the storage tank for use other than for tractor fuel?
"Answer: Yes.

"10. If you answer question 9 'Yes,' then answer this question: What damage has the defendant Dornbrook sustained as a result of the plaintiffs using gasoline for other than tractor fuel?

"Answer: $13.

"11. Did the plaintiffs Zimmerman damage the lane fence?

"Answer: Yes.

"12. If you answer question 11 'Yes,' then answer this question: What amount of damage has the defendant Dornbrook sustained as a result of the damage to the lane fence?

"Answer: $10.

"13. Did a sheep die as a result of negligence on the part of the plaintiffs Zimmerman?

"Answer: No.

"15. Did lambs die as a result of negligence on the part of the plaintiffs Zimmerman?

"Answer: No."

Motion for judgment was made on behalf of the plaintiffs and objections thereto filed by the defendant, together with defendant's motion for a new trial, on the following grounds:

"1. Because the court erred in admitting evidence against the objection of the defendant upon the trial.

"2. Because the court erred in refusing to receive evidence offered by the defendant upon the trial.

"3. Because the court erred in allowing the cob of corn shown to the plaintiff Edith Zimmerman while a witness to be examined by her and testified about by her and to be openly displayed before the jury, and on account thereof the jury was prejudiced in favor of the plaintiffs and against the defendant.

"4. Because plaintiffs' attorney, Henry P. Hughes, in his arguments to the jury, made offensive and improper remarks concerning defendant and his case that tended to, and did, influence the minds of the jury and aroused their passions and created sympathy for the plaintiffs and created prejudice and resentment toward the defendant, and tended to, and did, discredit and prejudice the defendant's case.

"5. Because the verdict is contrary to law.

"6. Because the verdict is contrary to the evidence.

"7. Because justice has not been done and a new trial is necessary in the interest of justice."

The trial court denied the motions for a new trial. Briefs were filed on behalf of the plaintiffs and defendant. The court concluded that all the issues raised in the counterclaim were duly and properly submitted to the jury; that no prejudicial error was committed; and that there was ample evidence to sustain the findings of the jury.

The court further stated that it recognized that counsel, in arguing the case, became rather overambitious, but it also recognized that both counsel are experienced and, in the opinion of the court, perfectly capable and able to represent the interests of their clients. The court was satisfied that the respective interests of the clients were ably and fully represented and that no one suffered as a result of the prejudicial arguments.

The court also stated that it was satisfied that a new trial was not necessary in the interests of justice, and denied all motions of the defendant. The court granted the motion of the plaintiffs for judgment on the verdict in the sum of $23.

The trial court found that the plaintiffs should be allowed costs even though the issues in their complaint were settled by stipulation, and concluded that they be allowed $100 costs, plus taxable disbursements. The defendant was allowed $15 costs, plus taxable disbursements, on the counterclaim.

The court further found that:

"The defendant verbally moved that that portion of the arguments taken by the court reporter be made part of the record in this matter. The court has learned that the reporter took notes of a portion of the opening statements, and a portion of the arguments, of his own accord; but he is unwilling to certify that that portion of his notes is an

accurate or verbatim report of all such statements and remarks; in other words, it is not complete. Due to the fact that this court does not customarily direct the reporter to take notes of the opening statements or of the arguments of counsel, and the court did not so direct in this case, but that it is a custom for the reporter to take down any objections that are made to arguments and any statement or ruling made by the court thereon, that that portion of the arguments of counsel which the reporter took at the request of the court are made a part of the record. The reporter has informed the court that neither side requested him to take notes of any opening statement or argument.

"Of the sum of $1,846.80 in the hands of the clerk of this court, the sum of $923.40 is the property of the plaintiffs and the sum of $923.40 is the property of the defendant. By virtue of the fact that there are indications that one side or the other might very well appeal any decision of this court, an order shall be entered directing said clerk to hold said funds until the time for appeal has expired; or, if an appeal is taken, until such time as the judgment of the supreme court is rendered.

"That thereafter the clerk shall then first pay out of the portion belonging to Zimmermans the sum of $25.12 to Leonard R. Wisner of Markesan, Wis.; and the sum of $23, together with $15 taxable costs, together with the taxable disbursements taxed against the Zimmermans by Dornbrook, by a check payable to A. H. Dornbrook, Emery Paul, and Lueck & Skupniewitz, his attorneys; and shall then pay the balance thereof to Oscar Zimmerman, Edith Zimmerman, and Henry P. Hughes, their attorney.

"That out of the portion belonging to the defendant Dornbrook said clerk shall pay, by check payable to Oscar Zimmerman, Edith Zimmerman, and Henry P. Hughes, their attorney, the sum of $100 costs together with the taxable disbursements taxed against Dornbrook by the Zimmermans; and shall then pay the balance thereof by check payable to A. H. Dornbrook and Emery Paul and Lueck & Skupniewitz his attorneys."

In the memorandum opinion of the court with reference to decision of the court, dated March 28, 1958, it was

stated that under the provisions of sec. 271.035, Stats., ". . . the court should exercise its discretion as it did and permit both parties to recover by reason of the fact that the plaintiff was in effect successful in his complaint and the defendant was successful to a certain extent on his counterclaim; and the way the court has handled the matter, the costs are in effect offset."

Judgment was entered April 1, 1958, in favor of the plaintiffs, Oscar and Edith Zimmerman, against A. H. Dornbrook, the defendant, in the sum of $900.40, together with the sum of $7.98 costs and disbursements, making the total sum $908.38.

During the trial the plaintiff, Mrs. Zimmerman, presented an ear of corn which was snapped off by the plaintiffs and frozen on the day it was decided not to fill the silo. The court rejected this evidence and, with adequate instructions, informed the jury to ignore the testimony with respect to the corn. It is our opinion that the defendant was not prejudiced by this ruling in view of the court's instructions.

In so far as the remarks made by counsel during his argument to the jury and referred to in the trial court's memorandum, we are also of the opinion that this did not prejudice the defendant, nor did it constitute reversible error.

In *Basile v. Fath* (1925), 185 Wis. 646, 649, 650, 201 N. W. 247, 202 N. W. 367, it is stated:

"From the very beginning, the necessity and propriety of raising questions such as are here presented during the conduct of a trial and in arguments to the jury by proper and timely objections, so that the trial court is called upon to then and there rule upon such conduct or argument, and the preserving of the rights of a party unsuccessfully objecting, by appropriate exceptions to such ruling, has been firmly established as a part of our procedure for the trial of civil cases both by statute and repeated decisions. . . .

"Such course of objecting to improper remarks so that an immediate ruling by the court and the admonishing of counsel may avoid injurious consequences therefrom has been the procedure in the cases heretofore passing upon such situations. It is only in cases where the trial court improperly refused to sustain such objections, or where counsel, after having been ruled against and admonished by the trial court, has nevertheless persisted in objectionable conduct or methods of argument, that this court has held new trials should have been granted."

It is a well-recognized rule that when a jury's findings are attacked, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence, that under any reasonable view, supports such findings. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740.

We conclude that no prejudicial error was committed and that there is ample evidence to sustain the findings of the jury. We are also satisfied that a new trial is not necessary in the interest of justice in view of the fact that all of the plaintiffs' claims were settled by stipulation, including the items relating to cows, sows, and the undisputed amount of $25.12 due to Wisner by the Zimmermans, that Dornbrook had verbally guaranteed. All of the allegations and complaints contained in the counterclaim were fully litigated and the questions in the special verdict covered all of the disputed facts.

We further conclude that the plaintiffs, Oscar and Edith Zimmerman, shall recover from the defendant, A. H. Dornbrook, the sum of $200.74 costs and disbursements; and that the defendant, A. H. Dornbrook, shall recover from the plaintiffs, Oscar and Edith Zimmerman, the amount of $15 costs, and his expenses and disbursements shall be limited to the items recovered on.

*By the Court.*—Judgment affirmed, except as to costs, and as to costs the cause is remanded with directions to retax the appellant's disbursements in accord with this opinion.